UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OMAR WARLICK,

              Petitioner,

v.                                          CASE NO. 06-10252
                                            HONORABLE STEPHEN J. MURPHY, III
KENNETH ROMANOWSKI,

              Respondent.
_____/

## OPINION AND ORDER
## DENYING PETITIONER'S MOTION TO STRIKE
## OR TO DISMISS RESPONDENT'S ANSWER,
## DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, AND
## GRANTING A CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Omar Warlick has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state conviction for first-degree murder. Respondent Kenneth Romanowski urges the Court to dismiss the habeas petition. The Court agrees with Respondent that Petitioner's claims lack merit or are procedurally defaulted. Therefore, the habeas petition must be denied.

## I. Background

### A. The State Court Proceedings

Petitioner was charged in Wayne County, Michigan with first-degree (felony) murder and possession of a firearm during the commission of a felony. The charges arose from allegations that Petitioner fatally shot Bryan Fortune during a robbery or attempted robbery on September 4, 2002. The shooting occurred in an apartment above the Beehive Lounge

on Gratiot Avenue in Detroit.  Mr. Fortune's girlfriend, Erin Walker, observed two men enter the apartment.  The first man had a gun, but she was not sure whether the second man also had a gun.  She heard two gunshots as she ran out of the apartment.  She called the police from the gas station across the street.  The police arrived shortly afterward and found Petitioner hiding in the lower level of the building about twenty feet from the nine-millimeter gun, which was used to kill Mr. Fortune.  A second man was seen running from the building and entering a Jeep Cherokee, which sped away from the scene.  He was not apprehended.  The prosecutor's theory was that Petitioner was the shooter, but also liable as an aider and abettor if the jury chose to believe that he did not fire the gunshot, which killed Mr. Fortune.

Petitioner did not testify.  The sole defense witness was a police officer, who testified that he examined a red Jeep Cherokee for fingerprints and found a live nine-millimeter bullet in the console between the two front seats of the vehicle.  The officer did not know who owned the vehicle or whether the fingerprints were usable.

The felony firearm charge was dismissed before trial, and on January 27, 2003, a circuit court jury found Petitioner guilty, as charged, of felony murder, MICH. COMP. LAWS § 750.316(1)(b).  The trial court sentenced Petitioner to mandatory life imprisonment without the possibility of parole.  The Michigan Court of Appeals affirmed Petitioner's conviction, *see People v. Warlick*, No. 247213 (Mich. Ct. App. July 29, 2004) (unpublished),[1] and on March 29, 2005, the Michigan Supreme Court denied leave to

---

[1]  Judge Helene N. White wrote a concurring opinion in which she concluded that the prosecutor's lengthy argument on felony murder, with examples having nothing to do with the evidence presented, was inappropriate.  Judge White nevertheless agreed with the majority that Petitioner's claims of prosecutorial misconduct and ineffective assistance of counsel did not

appeal, *see People v. Warlick*, 472 Mich. 878; 693 N.W.2d 821 (2005) (table).

## B. Federal Court Proceedings

Petitioner filed his habeas corpus petition on January 19, 2006.  He raised the following nine claims:

I.      The trial court erred reversibly and violated Petitioner's right to due process by giving a confusing and misleading instruction, which allowed the jury to believe that the intent required for a felony murder conviction could be inferred from the intent to commit the underlying felony; in the alternative, appellate counsel was ineffective for failing to raise this claim, and trial counsel was ineffective for failing to object to the instruction.

II.     Petitioner's conviction for felony murder must be reversed where the prosecution failed to present sufficient evidence to satisfy the constitutional due process standard of guilt beyond a reasonable doubt.

III.    The trial court erred reversibly by allowing Petitioner's involuntary and coerced statement to be entered into evidence.

IV.     Petitioner's due process right was violated by the Court's allowance, on the second day of trial, the endorsement of a prosecution evidence technician.

V.      Petitioner was denied the due process of the law and a fair trial where the prosecution and the police violated the terms of the discovery order and failed to disclose relevant evidence to the defense.

VI.     Petitioner's due process right to a fair trial was violated as a result of (A) the prosecutor improperly appealing to the jurors' civic duty to convict; (B) the prosecutor unconstitutionally shifting the burden of proof by telling the jurors that the defense counsel failed to ask specific questions, and suggesting counsel failed to ask specific questions and suggesting counsel failed to prove his case; (C) the prosecutor's cumulative

---

warrant reversal.  She noted that there was no objection to the prosecutor's argument, that the trial court instructed the jurors to follow its statement of the law, and that the court's instructions were accurate.

misconduct deprived Petitioner of his due process rights to a fair trial.

VII.    If trial counsel waived appellate review of the prosecutor's misconduct, then trial counsel deprived Petitioner of his state and federal constitutional rights to effective assistance of counsel.

VIII.   Petitioner was deprived of his fundamental right to testify in his own defense in violation of the Fourteenth Amendment Due Process Clause and trial counsel's advice was deficient and deprived Petitioner of effective assistance of counsel.

IX.     Petitioner was deprived of his due process right to a fair trial where the trial court over defense counsel's objection admitted a 911 tape recording where no foundation had been laid for admitting the evidence.

Respondent moved to dismiss the habeas petition on the ground that Petitioner did not exhaust state remedies for his first, fourth, and ninth claims. The Honorable Paul V. Gadola agreed and dismissed Petitioner's first, fourth, and ninth claims on September 10, 2007. In the same order, Judge Gadola ordered Respondent to file an answer to Petitioner's remaining claims within thirty days. Seven and one-half months later, Respondent filed an untimely answer, which Judge Gadola accepted. Petitioner then filed a motion to dismiss or to strike Respondent's answer as untimely. Finally, on September 4, 2008, Petitioner's case was reassigned from Judge Gadola to this Court.

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if the state court's adjudication of his claims on the merits resulted in:

(1) a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) a decision that was based on an unreasonable determination of the facts

4

in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

### III.  Discussion

#### A.  Sufficiency of the Evidence

Petitioner alleges that his conviction for felony murder must be reversed because the prosecution failed to present sufficient evidence to satisfy the constitutional standard of guilt beyond a reasonable doubt. According to Petitioner, the evidence adduced at trial did not support a finding of malice, the intent needed to be found guilty of felony murder. Petitioner contends that there was no evidence he fired any shots, planned a homicide, or anticipated that a homicide would occur during the commission of a robbery. He argues that, at most, the evidence proved he aided the commission of a robbery.

##### 1.  Legal Framework

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which

5

he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  After *Winship*, the critical question on review regarding the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The Jackson "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.  In Michigan, the elements of felony murder are:

> (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [the statute, including armed robbery].

*People v. Carines*, 460 Mich. 750, 759 (1999) (quoting *People v. Turner*, 213 Mich. App. 558, 566 (1995)) (alterations in original).

The only element in dispute here is malice, the intent needed to be found guilty of felony murder.  Malice may be inferred from the facts and circumstances of the homicide, including the use of a deadly weapon.  *Id.*  To demonstrate that an aider and abettor acted with malice:

> the prosecution must show that the aider and abettor either intended to kill, intended to cause great bodily harm, or wantonly and willfully disregarded the likelihood that the natural tendency of his behavior was to cause death or great bodily harm.  Further, if an aider and abettor participates in a crime with knowledge of the principal's intent to kill or to cause great bodily harm, the aider and abettor is acting with "wanton and willful disregard" sufficient to support a finding of malice.

6

*People v. Riley*, 468 Mich. 135, 140-141 (2003) (citations omitted).

### 2. Application

The Michigan Court of Appeals summarized the evidence as follows:

[T]he victim was shot and killed during a robbery in a bar. Afterward, defendant was found hiding in the bar, and the gun used to shoot the victim was found approximately twenty feet away. Defendant gave a statement admitting his participation in the offense as part of a planned robbery. Although defendant denied shooting the victim, gunshot residue was found on defendant's hands, face, and clothing shortly after the offense. In his police statement, defendant claimed that his partner, Spoon, shot the victim with a nine-millimeter handgun that Spoon owned.

*Warlick*, Mich. Ct. App. No. 247213, at 1-2.

### a. Guilt as a Principal

The jury could have inferred that Petitioner shot Bryan Fortune because he admitted to the police that he participated in the robbery, and he had gunshot residue on his forehead, face, hands, and clothing. He also was found hiding approximately twenty feet from the murder weapon. The fact that Mr. Fortune was shot with a firearm is an indication that the shooting was done with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm, knowing that death or great bodily harm was the probable result.

### b. Guilt as an Aider and Abettor

The jury could have inferred in the alternative that Petitioner aided and abetted the shooter. His statement to the police indicated that he accompanied Spoon to the Beehive Lounge, knowing that Spoon intended to commit a robbery. He waited with Spoon until the victim was alone with his girlfriend in the apartment. Then he and Spoon used a ladder to climb up to the second-floor apartment. They entered the apartment, where, according to

Petitioner, Spoon shot Mr. Fortune, who was unarmed.   Petitioner grabbed the cash register and hid when he saw the police arrive.

Mr. Fortune died from a single gunshot to the chest.   According to a forensic chemist, the presence of gunshot residue on Petitioner was an indication that he fired a gun or was within three feet of someone who recently fired a gun.

Although Petitioner's statement to the police does not indicate when he became aware that Spoon had a gun, he did say that the gun belonged to Spoon, and Erin Walker testified that the first man to enter the apartment was carrying a gun.   If the jury chose to believe Petitioner's version of the facts (that Spoon was the shooter), the jury could have inferred from Ms. Walker's testimony that Petitioner knew Spoon had a gun when he and Spoon first entered the apartment.

Furthermore, by engaging in an armed robbery with Spoon, Petitioner "set in motion a force likely to cause death or great bodily harm." *Carines*, 460 Mich. at 760.   Even if he did not personally use the gun, the jury could have inferred that he acted with malice, that is, with wanton and wilful disregard of the possibility that death or great bodily harm would result.  *Id*.  The use of a gun during the robbery and the nature of the killing established that the killing was neither accidental nor done without malice.  *Id*.   At the very least, Petitioner became aware of Spoon's intent during the events in question.  *Id*. at 760-61.

### 3.  Summary

A rational trier of fact could have concluded that Petitioner personally possessed the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm or that he participated in the robbery with knowledge that Spoon intended to kill, to cause great bodily harm, or to create a high risk of death or great bodily harm.   Under

8

either theory, there was sufficient evidence of malice, particularly when all inferences are drawn in favor of the prosecution. Therefore, the state court's conclusion -- that the evidence was sufficient to sustain Petitioner's murder conviction -- did not result in a decision that was contrary to, or an unreasonable application of *Jackson*. Petitioner has no right to relief on the basis of his sufficiency-of-the-evidence claim.

**B.  Petitioner's Statement to the Police**

Petitioner alleges that the trial court erred by admitting in evidence his statement to the police. Petitioner contends that his statement was coerced and involuntarily made because the police promised him leniency in the form of a meeting with the prosecutor to help resolve the matter if he first made a statement. The Michigan Court of Appeals determined from the facts that Petitioner's statement was voluntary and that the trial court did not err when it denied Petitioner's motion to suppress his statement.

**1.  Legal Framework**

A confession is voluntary and admissible in evidence if it is "the product of an essentially free and unconstrained choice by its maker[.]" *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). "A statement is not 'compelled' within the meaning of the Fifth Amendment if an individual 'voluntarily, knowingly and intelligently' waives his constitutional privilege" to remain silent. *Colorado v. Spring*, 479 U.S. 564, 573 (1987) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).

The inquiry whether a waiver is coerced "has two distinct dimensions." *Moran v. Burbine,* 475 U.S. 412, 421 (1986).

First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion,

9

or deception.  Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Id.* (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

Factors to consider when deciding whether an interrogation rises to the level of coercion are:  "the age, education and intelligence of the suspect; whether the suspect was advised of his *Miranda* rights; the length of the questioning; and the use of physical punishment or the deprivation of food, sleep or other creature comforts."  *Jackson v. McKee*, 525 F.3d 430, 433-34 (6th Cir. 2008) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).[2]

## 2.  The State Court Evidentiary Hearing

Police Officer Anthony Jackson testified at a state evidentiary hearing that Petitioner was arrested about 6:30 a.m. on September 4, 2002.  Officer Jackson advised Petitioner of his constitutional rights at approximately 8:50 a.m.  Petitioner read aloud one of his rights without difficulty.  He signed the constitutional rights form, and he initialed all his rights.

Petitioner completed the eleventh grade ten years earlier, and he did not appear to be under the influence of drugs or alcohol.  He was permitted to use the restroom, and he was given food.  He had been awake since at least 12:30 a.m., but he claimed to fully understand his rights, and he agreed to waive them and to speak with Officer Jackson without an attorney present.  He and Officer Jackson conversed for about an hour and ten

---

[2] *Miranda* requires warning an accused prior to any questioning "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."  *Miranda*, 384 U.S. at 444.

minutes after Petitioner signed the constitutional rights form and before Officer Jackson took Petitioner's statement.

Officer Jackson claimed that he did not threaten Petitioner, promise him anything, or coerce him into making a statement. Officer Jackson denied telling Petitioner that he would be permitted to speak to the prosecutor to help him resolve the matter if he gave a statement. Officer Jackson also denied telling Petitioner that the prosecutor might be lenient if Petitioner made a statement or cooperated with the police in locating the other suspect. (Tr. Nov. 4, 2002, at 21-29, 36-38, 41-42, 45-46, 49, 56-57.)

Petitioner testified at the evidentiary hearing that he asked Officer Jackson for permission to talk with a prosecutor about the case and the charges against him. According to Petitioner, Officer Jackson responded that they needed to take his statement first. (*Id.* at 59-60, 62.)

The trial court denied Petitioner's motion to suppress his statement after concluding from Petitioner's demeanor and educational level that Petitioner was quite knowledgeable and understood his rights and that the constitutional requirements were fulfilled. The trial court concluded that Petitioner's statement was given freely, voluntarily, and knowingly. (*Id.* at 77-78.)

### 3.  Analysis

A federal habeas court must "give great weight to the considered conclusions of a coequal state judiciary," but "the ultimate question whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). This Court finds the trial court's determination -- that

11

Petitioner's confession was made freely, knowingly, and voluntarily -- supported by the record. Petitioner was twenty-eight years old at the time of his confession, and he was able to read and write the English language. He had completed the eleventh grade, and he was not deprived of food or the use of a restroom, nor questioned for an unnecessarily long period of time. Although he had been awake throughout the night, there is no indication in the record that his confession was the result of a lack of sleep. Additionally, he was sufficiently intelligent to recognize that it was beneficial to say that he did not own the crime weapon and did not shoot anybody. He was advised of his constitutional rights, and he demonstrated at the evidentiary hearing that he understood his rights.

Petitioner also admitted at the evidentiary hearing that it was *after* he made his statement to the police that the police promised to speak with the prosecutor about his cooperation in attempting to find the other suspect. A promise made after the defendant gave a statement is not coercive, because the decision to make a statement could not have depended on the officer's promise. *United States v. Craft*, 495 F.3d 259, 263-64 (6th Cir. 2004), *cert. denied*, __ U.S. __, 128 S. Ct. 679 (2007).

To the extent that Petitioner's testimony at the evidentiary hearing differed from Officer Jackson's testimony, it is noteworthy that the trial court implicitly found Police Officer Jackson's testimony to be more credible than Petitioner's testimony. "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

This Court agrees with the state courts that Petitioner's confession was freely, voluntarily, and knowingly made. Therefore, the state appellate court's opinion and order

affirming the trial court's decision to admit Petitioner's statement in evidence did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent.

### C.  The Discovery Order; Disclosure of Relevant Evidence

Petitioner alleges next that he was denied due process of law and a fair trial because the prosecution violated the trial court's discovery order and failed to disclose relevant evidence.  The alleged violation of a state discovery order is not a cognizable claim on habeas review.  *Colston v. Burke*, 37 Fed. Appx. 122, 125 (6th Cir. 2002) (unpublished).

As for the alleged failure to disclose relevant evidence to the police, the Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  There are three components to a true *Brady* claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999).

> "[E]vidence is material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *United States v. Phillip,* 948 F.2d 241, 249 (6th Cir.1991) (quoting *Pennsylvania v. Ritchie,* 480 U.S. 39, 57 (1987)).  Further, reversal is not always warranted when a *Brady* violation occurs: "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to complete failure to disclose." [*United States v. Bencs*, 28 F.3d 555, 560 (6th Cir. 1994)].  "Delay . . . violates *Brady* [only] when the delay itself causes prejudice." *United States v. Patrick,* 965 F.2d 1390, 1400 (6th Cir. 1992).

*O'Hara v. Brigano*, 499 F.3d 492, 502 (6th Cir. 2007).

Defense counsel requested supplemental discovery at the evidentiary hearing held on November 4, 2002. The prosecutor agreed to make certain information available, and the trial court ordered the prosecutor to provide defense counsel with the names and addresses of *res gestae* witnesses.

At the close of the first day of trial, defense counsel stated that the prosecution had not provided him with all the discovery that he requested. (Tr. Jan. 22, 2003, at 170-72.) By the second day of trial, however, he had received a "substantial amount" of the things that he had requested. The trial court proceeded with trial, but promised to re-consider the issue if defense counsel found that he was at a disadvantage due to not having received any additional material. Later that same morning, defense counsel spoke with one of the evidence technicians, and he received the photographs that he had requested. The evidence technician's testimony was postponed so that defense counsel could review her anticipated testimony and documents over the weekend. (Tr. Jan. 23, 2003, at 3-20, 46.)

Petitioner points to only two specific instances of evidence being withheld. Both instances came to light during defense counsel's cross-examination of police officers. During the cross-examination of Police Officer Don Dent, defense counsel stated that Officer Dent's information sheet on a gunshot residue test was not in his discovery packet. The trial court, however, allowed defense counsel to take his time while reviewing the document, and defense counsel was able to adequately cross-examine Officer Dent. (*Id.* at 54-58.)

Defense counsel subsequently complained of not receiving the preliminary complaint record of Police Officer Paul Collins, who responded to the crime scene and observed two

14

casings near the victim's body.  However, defense counsel cross-examined Officer Collins and did not complain of being hampered by the untimely disclosure of Officer Collins' report.  (*Id.* at 65-71.)

Defense counsel ultimately received all the discovery in the case.  Although some of the discovery material was not produced until trial, the untimely disclosure did not prejudice Petitioner's defense.  Therefore, Petitioner has failed to establish a true *Brady* claim, and he has no right to habeas relief.

### D.  The Prosecutor

Petitioner alleges that the prosecutor shifted the burden of proof and improperly appealed to the jurors' civic duty to convict.  Petitioner further alleges that the prosecutor's cumulative misconduct deprived him of a fair trial.

### 1.  Procedural Default

Respondent contends that Petitioner's prosecutorial-misconduct claim is procedurally defaulted.  A procedural default is "a critical failure to comply with state procedural law."  *Trest v. Cain*, 522 U.S. 87, 89 (1997).  "When a habeas petitioner fails to obtain consideration of a claim by a state court . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review." *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977), and *Picard v. Connor*, 404 U.S. 270, 275-80 (1971)). "[P]rocedural default results where three elements are satisfied:  (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state

15

courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

All three elements of procedural default are satisfied here. First, Petitioner failed to comply with a state procedural rule that requires defendants to preserve their constitutional and nonconstitutional claims for appellate review by first raising them in the trial court. *See Carines*, 460 Mich. at 761-64 (unpreserved constitutional error); *People v. Grant*, 445 Mich. 535, 546 (1994) (unpreserved nonconstitutional error). Second, the last state court to review Petitioner's claim in a reasoned opinion was the Michigan Court of Appeals, which reviewed Petitioner's claim for plain error. The state appellate court's review for "plain error" constituted enforcement of the procedural rule. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

Third, the contemporaneous-objection rule was an adequate and independent state ground for the state court's decision because the rule was "firmly established and regularly followed" when it was applied. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir.1998) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). Because all three elements of procedural default are satisfied, the Court may excuse Petitioner's procedural default only if he demonstrates cause for the default and actual prejudice as a result of the alleged violation of federal law or that a fundamental miscarriage of justice will occur if the Court fails to consider the claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### 2. "Cause"

16

Petitioner alleges that his trial attorney was ineffective for not objecting to the prosecutor's remarks. Constitutionally ineffective assistance of counsel is "cause" for a procedural default, but "[a]ttorney error short of ineffective assistance of counsel . . . does not constitute cause and will not excuse a procedural default." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 486-88 (1986)). To prove that defense counsel was constitutionally ineffective, Petitioner must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that the result of the proceeding would have been different "but for counsel's unprofessional errors." *Id.* at 688 and 694. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

### a.  Appeal to the Jurors' Civic Duty

Petitioner maintains that the prosecutor appealed to the jurors' civic duty to convict by referring to other uncharged crimes, which had nothing to do with the actual charge against him. The prosecutor did refer to unrelated crimes in his closing argument, but he did not insinuate that Petitioner was guilty of the crimes or that the jury should convict Petitioner to prevent those crimes from being committed. Instead, he used the crimes to illustrate certain predicate felonies for felony murder and the principle of aiding and abetting. (Tr. Jan. 27, 2003, at 51-63.) The comments did not amount to a civic-duty argument. Therefore, defense counsel was not ineffective for failing to object.

17

### b.  Shifting the Burden of Proof

Petitioner states that the prosecutor shifted the burden of proof by telling the jurors that defense counsel failed to ask specific questions and failed to address one prong of the test for intent to commit felony murder.  Petitioner contends that the prosecutor's comments suggested that defense counsel failed to disprove the prosecutor's case.

The prosecutor's disputed remarks were a response to defense counsel's closing argument that Petitioner was not the shooter and that he lacked the necessary intent to be found guilty of felony murder.  The prosecutor pointed out on rebuttal that defense counsel did not address the issue of whether Petitioner intended to create a high risk of death or great bodily harm.  (*Id.* at 91-93.)  The prosecutor was entitled to wide latitude during his rebuttal argument, *Angel v. Overberg*, 682 F.2d 605, 607-08 (6th Cir. 1982) (*en banc*) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)), and his remarks were a fair response to defense counsel's closing argument.  Therefore, defense counsel was not ineffective for failing to object to the prosecutor's disputed remarks.

In conclusion, defense counsel's failure to object to the prosecutor's remarks did not rise to the level of deficient performance.  Therefore, defense counsel was not ineffective and his lack of objections to the prosecutor's closing remarks cannot be considered "cause" for Petitioner's procedural default.

### 3.  Prejudice; Miscarriage of Justice

The Court need not determine whether Petitioner was prejudiced by the alleged constitutional errors, because he has failed to show "cause" for his procedural default. *Willis*, 351 F.3d at 746 (citing *Simpson v. Jones*,  238 F.3d 399, 408 (6th Cir. 2000)).  The

18

narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Carrier*, 477 U.S. at 496. To be credible, a claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327.

Petitioner has not presented any new evidence in support of a claim of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of Petitioner's claims about the prosecutor. His prosecutorial-misconduct claim is procedurally defaulted, and his contention that the cumulative effect of the prosecutor's conduct deprived him of a fair trial lacks merit, because constitutional errors cannot be cumulated to support habeas relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied*, __ U.S. __, 127 S. Ct. 557 (2006).

### E.  The Right to Testify

#### 1.  On-the-Record Waiver of the Right

Petitioner alleges next that defense counsel should have asked the trial court to ascertain whether Petitioner's waiver of the right to testify was knowing. The Court agrees with the Michigan Court of Appeals that defense counsel was not ineffective for failing to

obtain a knowing and express waiver of the right to testify.  There is no right to have a trial court inform the defendant of the right to testify or to ascertain whether the defendant wishes to waive the right to testify.  *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997).  In fact, "judicial interference with counsel's strategic decision not to place his client on the stand 'poses the danger that the judge will appear to encourage the defendant to invoke or waive this right' even when it is unwise to do so."  *Id.* at 79 n.2 (quoting *United States v. Joelson*, 7 F.3d 174, 178 (9th Cir. 1993)).

Exceptions to the general rule may apply when the trial court suspects that defense counsel is frustrating the defendant's wish to testify, when the defendant has expressed his desire to testify, or when there is no apparent reason for the decision not to testify.  *Id.* (citing *United States v. Pennycooke*, 65 F.3d 9, 13 (3d Cir. 1995); *Ortega v. O'Leary*, 843 F.2d 258, 261 (7th Cir. 1988); and *United States v. Ortiz*, 82 F.3d 1066, 1071 (D.C. Cir. 1996)).  There is no indication in the record before this Court that Petitioner wanted to testify or that defense counsel ignored his desire to testify.  "Barring any statements or actions from [Petitioner] indicating disagreement with counsel or the desire to testify, the trial court [wa]s neither required to sua sponte address [Petitioner] and inquire whether [Petitioner] knowingly and intentionally waived the right to testify, nor ensure that [Petitioner] ha[d] waived the right on the record."  *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000) (citing *Joelson*, 7 F.3d at 177).

## 2.  Defense Counsel's Advice or Lack of Advice

Petitioner nevertheless claims that his trial attorney failed to advise him that he had an absolute right to testify and that it was his choice to make.  Instead, according to Petitioner, his attorney told him that he would not be testifying and that, if he did testify, he

20

would be impeached with an old conviction for carrying a concealed weapon.  The Michigan

Court of Appeals determined that appellate review of this claim was foreclosed because

the record failed to disclose what advice Petitioner received and why the advice was given.

The Supreme Court has held that defendants in criminal cases have a constitutional

right to testify.  *Rock v. Arkansas*, 483 U.S. 44, 51-52 (1987).  Any relinquishment of the

right to testify must be knowing and intentional.  *Joelson*, 7 F.3d at 177 (citing *United States*

*v. Edwards*, 897 F.2d 445, 446 (9th Cir. 1990), and *United States v. Martinez*, 883 F.2d

750, 756 (9th Cir. 1989), *vacated on other grounds*, 928 F.2d 1470 (9th Cir. 1991)).

Defense counsel's role is to advise the defendant whether to testify, but the ultimate

decision is for the defendant to make.  *United States v. Hover*, 293 F.3d 930, 934 (6th Cir.

2002).

> [W]hen a tactical decision is made not to have the defendant testify, the
> defendant's assent is presumed.  *Joelson*, 7 F.3d at 177.  This is so because
> the defendant's attorney is presumed to follow the professional rules of
> conduct and is "strongly presumed to have rendered adequate assistance"
> in carrying out the general duty "to advocate the defendant's cause and the
> more particular duties to consult with the defendant on important decisions
> and to keep the defendant informed of important developments in the course
> of the prosecution."  *Strickland v. Washington*, 466 U.S. 668, 688-90, 104 S.
> Ct. 2052, 80 L. Ed. 2d 674 (1984).

*Webber*, 208 F.3d at 551 (footnote omitted).

Petitioner's waiver of the right to testify "is presumed from [his] failure to testify or

notify the trial court of the desire to do so."  *Id.* at 551 (citing *Joelson*, 7 F.3d at 177).  If he

wanted to testify, he could have rejected his attorney's advice "by insisting on testifying,

communicating with the trial court, or discharging counsel."  *Id.*

Of course, Petitioner could not have asserted his right to testify if he was unaware

21

of the right and the fact that it was his decision to make.  However, even if defense counsel failed to inform Petitioner of his right to testify and that the decision was his to make, Petitioner has not alleged what he would have said if he had testified.  He does not claim to have had some genuinely exculpatory evidence, and where a  defendant would have testified only to demonstrate that the prosecution failed to disprove his defense beyond a reasonable doubt, there is a weaker argument that the defendant was prejudiced by not testifying.  *Owens v. United States*, 483 F.3d 48, 59 (1st Cir. 2007) (citing *Brown*, 124 F.3d at 80-81).  The Court concludes that defense counsel's allegedly deficient performance did not prejudice the defense.  Therefore, Petitioner has failed to satisfy both prongs of the *Strickland* test, and his ineffectiveness claim fails.

## IV.  Conclusion

The state appellate court's adjudication of Petitioner's claims did not result in an unreasonable determination of the facts or in a decision that was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  Accordingly, the habeas corpus petition [Dkt. 1] is **DENIED**.  Petitioner's motion to strike or to dismiss Respondent's answer to the habeas petition [Dkt. 30] is **DENIED**, because Judge Gadola determined that Respondent's failure to respond in a timely fashion was the result of excusable neglect.  The Court **GRANTS** a certificate of appealability on all Petitioner's claims and leave to proceed *in forma pauperis* on appeal because reasonable jurists could disagree with the Court's resolution of Petitioner's claims, and the issues arguably warrant encouragement to proceed further.  *Banks v. Dretke*, 540 U.S. 668, 674 (2004).

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated:  January 14, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on January 14, 2009, by electronic and/or ordinary mail.

s/Alissa Greer
Case Manager